## TICONIC BANK *versus* JAMES STACKPOLE.

By the Act of 1841, c. 44, § 12, the protest of any foreign or inland bill of exchange, or promissory note or order, duly certified, by any notary public under his hand and official seal, is made legal evidence of the facts stated in such protest, as to the same, and also as to the notice given to the drawer or indorser, in any court of law.

The word "certificate" in the 6th section of the above chapter, is equivalent to the word "protest" in the 12th section, when it is under the hand and seal of the notary.

By common and commercial law, the certificate of a foreign notary, under his hand and notarial seal, of the presentment of a foreign bill for acceptance or payment, and of his protest, is received in all courts. Such protests prove themselves.

Drafts drawn in this State, and payable in other States, are foreign bills of exchange.

A note payable in another State, may be treated as a foreign bill, so far as to admit the protest of a foreign notary as evidence in a suit against the indorser.

ON REPORT from *Nisi Prius*, MAY, J., presiding.

ASSUMPSIT against defendant as indorser of five drafts and notes, all of which were payable out of the State.

The general issue was pleaded. The specifications of defence were, that the defendant had no notice of the non-payment of said drafts, and also, that the plaintiffs had taken and reserved more than the legal rate of interest on said drafts and notes.

The evidence being in, the case was withdrawn from the jury, and submitted to the full Court, by agreement of the parties, authorizing the Court to draw such inferences as a jury might legally draw from such of the testimony as was legally admissible, and to render such judgment as the law and evidence should require.

Ticonic Bank *v.* Stackpole.

If the second specification of defence is made out, the Court are to render such judgment as to damages and costs as the case requires.

In case the plaintiffs are entitled to damages, the Court are to fix the amount.

*J. H. Drummond,* for plaintiffs, contended that they had introduced the protests of the notaries, under their hands and seals, stating that they presented the several drafts and notes at the places where they were payable, on the last day of grace; that payment was refused; and that they duly and officially notified the drawers and indorsers, under cover, to the address of Edward G. Hoag, cashier of the Ticonic Bank, Waterville Maine, per mail..

These protests are evidence of all the facts stated therein. R. S., c. 44, § 12; 23 Maine, 553.

Mr. Hoag testified that he delivered the notices to the defendant on the day of their arrival at the Waterville post office, when the mail arrived in season; if not, early next morning. This is using due diligence; and the defendant should be defaulted for the amounts of the notes and drafts, damages, interest and costs of protest.

The damages are three per cent. of the amount. R. S., c. 115, § 110.

*S. Heath* and *Stackpole,* for defendant, argued that the evidence by a notarial protest is prescribed in R. S., c. 44, § § 6, 12. By the former section his protests are required to be recorded in a book of records, and his copies or certificates shall be received as evidence of what he has done. By the latter section, "the protest duly certified under his hand and seal" is legal evidence of the facts stated in such protest.

The protest is the declaration in writing of what he has done, under his hand and seal. It requires the subscription of his name and the affixing of his notarial seal to make up the "protest." The statute appears to require something more to be done to make his official doings legal evidence.

It does not contemplate the introduction of the original protest, but a certified copy of it.

The papers introduced appear to be the original protests, and if such, then they are not the statute evidence. If it is said, if they are the original, they ought to answer equally as well as copies, the reply is, that the admission of such testimony is a mere statute regulation, and must be strictly pursued.

The protest which contains the doings of the notary, his name and seal, must be duly certified under his hand and official seal before it is legal evidence.

CUTTING, J.—In argument the plaintiff abandons his claim to damages on the draft of June 5th, 1854, and the defendant all opposition to a recovery on the note of July 22d, 1855. In relation to the other note of Sept. 14th, and the two drafts of Sept. 4th and 19th, 1854, the defendant contends, that he has received no legal notice of their being dishonored; because the evidence, by which such notice is attempted to be shown, is not that required by statute; that instead of the original protests, certified copies of them only are made admissible.

Prior to the R. S., of 1841, c. 44, § § 6 and 12, no protest of an inland bill of exchange, note or order was receivable in evidence as proof of the facts therein certified; such facts could only be established by the testimony of the notary himself taken in the form of a deposition, or elicited from him on the stand, subject to cross-examination; except in case of his decease or being beyond the jurisdiction, when his records were admissible upon the common law principle, as being the next best evidence, and by the statute of 1821, c. 101, for the same reason. *Holmes* v. *Smith*, 16 Maine, 181.

But by the common and commercial law the protest of a foreign bill of exchange was indispensably necessary, with certain exceptions, to fix the liability of the prior parties. "And the certificate of a foreign notary under his hand and official seal of the presentment of a foreign bill for accept-

ance or payment, and of his protest thereof for non-acceptance or non-payment, is received in all courts by the usages and courtesy of nations." Such protests are presumed to be in accordance with the law of the place where made; they prove themselves, and their contents are to be received as true; and the several States of our Union in this particular are considered foreign to each other. 3 Kent's Com. 93; Chitty on Bills, (ed. of 1836,) p. 642; *Townsley* v. *Sumrall*, 2 Peters, 170; *Holliday* v. *McDougal*, 20 Wend. 81.

Such was the law of this State in relation to foreign and domestic bills, until the enactment of 1841, c. 44, before referred to; when, by the 12th section, "the protest of any foreign or inland bill of exchange, or promissory note, or order, duly certified, by any notary public, under his hand and official seal, was made legal evidence of the facts stated in such protest, as to the same, and also as to the notice given to the drawer or indorser, in any court of law." This section was in affirmance of the common law relating to foreign bills, and embraced within its provisions all inland bills, notes and orders, so as to render all subjects of protests, and all protests alike receivable as evidence, a provision that should receive the approbation of the commercial community, as being a sure and expeditious mode of procuring and perpetuating testimony.

It is contended, however, by the defendant, that although the plaintiff has complied with the requirements of the 12th section, yet the original protest is not admissible to charge him, and he relies on the 6th section, which provides that " every notary public shall record at length in a book of records, all acts, protests, depositions, and other things, by him noted or done in his official capacity, and that all *copies or certificates*, by him granted, shall be under his hand and notarial seal, and shall be received as evidence of such transaction." This section refers to two species of evidence, viz., copies and certificates. A *copy* is a transcript from an original; whereas, a *certificate* is a declaration in writing, which, when under the hand and seal of the notary, becomes his protest, and is by

the 6th section denominated a certificate, and by the 12th a protest; the former before, and the latter after authentication, when they become the same thing.

Under either section, therefore, the protests were legally admissible, and, with the testimony of the cashier, are sufficient to fix the indorser.

We might, if it were necessary, come to the same conclusion upon other considerations.

The drafts being made payable in another State, are foreign bills of exchange. *Bank of U. S.* v. *Daniel*, 12 Pet. 32; *Warren* v. *Warren*, 16 Maine, 259.

A note payable at a place in another State, in a suit against the indorser, may, so far as to admit the protest as evidence, be treated as a foreign bill. *Carter* v. *Burley*, 9 N. H. 558, and cases there cited, and subsequently confirmed in a series of decisions by that court.

Consequently the protests of the notaries, residing in the State where the paper was payable, were legally admissible by the common law, independently of any statute regulation of this State.

In relation to the question of usury, we are of opinion that the testimony fails to establish that fact. And according to the agreement of the parties, the defendant must be defaulted and judgment rendered for the amount of the notes and drafts, (except the one on C. A. Blanchard & Co.,) with interest from the time they severally matured, damages at the rate of three per cent. and costs of protests.

TENNEY, C. J., and RICE, APPLETON, and MAY, J. J., concurred.